J-S47025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MATTHEW NICHOLAS DE LA ROSA | |
| Appellee | No. 2063 MDA 2015 |

Appeal from the Order Entered October 26, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002218-2015

BEFORE: SHOGAN, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:             **FILED SEPTEMBER 14, 2016**

The Commonwealth of Pennsylvania appeals from the order of the Berks County Court of Common Pleas granting the motion to suppress evidence filed by Appellee Matthew Nicholas De La Rosa. We reverse the order granting Appellee's suppression motion and remand for further proceedings.

The trial court summarized the factual history as follows:

> On April 12, 2015 at 2:55 am, Officer Bryan Cilento was on patrol in Mt. Penn Borough, in uniform, in a marked police vehicle. He saw a Mazda 6 run a stop sign; he then activated his lights and siren and initiated a traffic stop. [Appellee] was in the front passenger seat of the stopped vehicle. The driver was the only other occupant of the vehicle. When the officer approached the driver side of the vehicle, he smelled the strong odor of burnt marijuana coming from the vehicle. [When he approached the vehicle, he informed the passengers that he smelled marijuana. Appellant responded that they had smoked earlier in the day and showed the officer the marijuana

wrappings in the cup holder area.[1]  N.T., 8/27/2016, at 9, 12, 14.  Officer Cilento] had the driver get out of the vehicle.  He next asked the passenger, [Appellee], to exit the vehicle as well.  Officer Cilento asked the defendant if he had any weapons on him; he was going to do a pat down for safety reasons.  The officer then asked him if he had anything else on his person other than marijuana and was told yes.  The officer asked him where[,] and [Appellee] pointed toward his right front pant pocket.  The officer then asked [Appellee] if he could retrieve what was in there, was told yes, and he did so.  The officer recovered several small glassine baggies with gray powdery substance that was suspected heroin.  [Appellee] was handcuffed, placed under arrest and put in the back of the patrol car.  Then Officer Cilento searched the vehicle and found 2 boxes of empty glassine packets used to package narcotics.  (Notes of Testimony, 8/27/15, pp. 3-11).

[Appellee] was charged by [c]riminal [i]nformation with one count of [d]elivery of a [c]ontrolled [s]ubstance, in violation of 35 P.S. § 780- 113(a)(30), a felony.

Trial Court Opinion, filed 2/3/2016, at 1-2.  On July 9, 2015, Appellee filed an omnibus pre-trial motion.  On August 27, 2015, the trial court held a hearing.  The parties filed supplemental briefs.  On October 26, 2015, the trial court granted Appellee's motion to suppress statements and physical evidence.

On November 25, 2015, the Commonwealth filed a timely notice of appeal to the Superior Court, certifying that this ruling terminated or substantially handicapped the prosecution of the case.  Both the

---

[1] The officer testified that during the search, he located the cigar wrapping "that had the marijuana in it, initially, from what they had smoked, but there wasn't really any marijuana.  It was just the wrapping in the cup holder area."  N.T., 8/27/2015, at 8.

Commonwealth and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

The Commonwealth raises the following issue on appeal:

> Did the trial court err in suppressing statements and evidence flowing from a lawful traffic stop, consensual search, and custodial interview of [Appellee], who was the passenger of the vehicle?

Appellant's Brief at 4.

This Court's standard of review of a denial of a motion to suppress evidence is as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

**_Commonwealth v. Jones_**, 121 A.3d 524, 527 (Pa.Super.2015), *reargument denied* (Sept. 30, 2015), *appeal denied,* 135 A.3d 584

(Pa.2016) (quoting **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa.2010) (internal brackets omitted)).

"Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." **Commonwealth v. Stilo**, 138 A.3d 33, 35–36 (Pa.Super.2016) (citing **In Interest of L.J.**, 79 A.3d 1073, 1083–87 (Pa.2013)).

"Interaction between citizens and police officers, under search and seizure law, is varied and requires different levels of justification depending upon the nature of the interaction and whether or not the citizen is detained." **Commonwealth v. Stevenson**, 832 A.2d 1123, 1126-27 (Pa.Super.2003). Pennsylvania recognizes three types of interactions between police officers and citizens. **Id.**

> The first category, a mere encounter or request for information, does not need to be supported by any level of suspicion, and does not carry any official compulsion to stop or respond. The second category, an investigative detention, derives from **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)[,] and its progeny: such a detention is lawful if supported by reasonable suspicion because, although it subjects a suspect to a stop and a period of detention, it does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The final category, the arrest or custodial detention, must be supported by probable cause.

*Commonwealth v. Gonzalez*, 979 A.2d 879, 884 (Pa.Super.2009) (quoting

*Commonwealth v. Moyer*, 954 A.2d 659, 663 (Pa.Super.2008) (*en banc*)

(quoting *Commonwealth v. Smith*, 836 A.2d 5, 10 (Pa.2003))).

This Court has explained the distinction between the categories of

detention as follows:

> A "mere encounter" can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an "investigative detention," by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires "reasonable suspicion" of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Stevenson*, 832 A.2d at 1127-29.

"The key difference between an investigative detention and a custodial

one is that the latter 'involve[s] such coercive conditions as to constitute the

functional equivalent of an arrest.'" *Commonwealth v. Pakacki*, 901 A.2d

983, 987 (Pa.2006) (quoting *Commonwealth v. Ellis*, 662 A.2d 1043, 104

(Pa.1995)). To determine whether an encounter with the police is custodial,

the court considers the totality of the circumstances and applies an objective

standard "with due consideration given to the reasonable impression

conveyed to the person interrogated rather than the strictly subjective view

of the troopers or the person being seized." ***Id.*** (quoting ***Commonwealth v. Edmiston***, 634 A.2d 1078, 1085–86 (Pa.1993)).

The police are required to provide ***Miranda***[2] warnings only when a suspect is in custody. ***See, e.g., Pakacki***, 901 A.2d at 987. The Supreme Court of Pennsylvania has found that "[a] person is in custody for ***Miranda*** purposes only when he 'is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.'" ***Id.*** at 987-88 (quoting ***Commonwealth v. Johnson***, 727 A.2d 1089, 1100 (Pa.1999)). The Supreme Court of the United States has stated that to determine "whether an individual was in custody, the 'ultimate inquiry is . . . whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" ***Id.*** (quoting ***Stansbury v. California***, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)).

In ***Pakacki***, a uniformed officer, in a marked patrol car, was given the appellee's name and description during an investigation of a shooting. The officer saw the appellee and another man walking on the side of the road and "with the lights on his patrol car flashing, . . . pulled over, got out, called appellee over, asked him if he had any weapons, drugs, or needles, and told him that, for the safety of both of them, he was going to pat him

---

[2] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

down to ensure he had no weapons." 901 A.2d at 985. The officer smelled marijuana and, during the pat down search, felt an object he believed to be a marijuana pipe. *Id.* The officer then asked the appellee what was in his pocket, and the appellee responded that it was a marijuana pipe. *Id.* The Supreme Court held that the appellee "was not in custody so as to require *Miranda* warnings before the officer asked him about the object in his pocket." *Id.*

In *Pakacki*, the Supreme Court distinguished this Court's finding in *Commonwealth v. Ingram*, 814 A.2d 264 (Pa.Super.2002). In *Ingram*, this Court found that the investigatory detention and pat-down frisk of the appellant was proper where the police received a call, from an identified caller, indicating that the appellant was in possession of the caller's vehicle, which had been stolen several weeks earlier. The caller described the appellant, identified his location, and stated he observed a gun in the appellant's possession. *Id.* at 270.[3] This Court, however, found that the appellant should have been provided his *Miranda* warnings before police

_____

[3] The Court noted "the officer responded to the complaint and found [the a]ppellant to be in substantially the same place and wearing the same garments as described by [the caller]." *Ingram*, 814 A.2d at 270. This Court found that "[b]ased on the accuracy of that information, [the police officer] had reason to believe that [the caller's] additional statement that [the a]ppellant possessed a gun was also credible." *Id.* The Court also noted that the officer had been threatened by [the a]ppellant during a previous arrest. *Id.* This Court, therefore found, under the totality of the circumstances, that the investigatory stop and the frisk were justified. *Id.*

questioned him. *Id.* at 271. The Court noted that three police vehicles arrived at the appellant's location. *Id.* Two officers approached the appellant and asked to speak to him regarding the unauthorized use of a vehicle. *Id.* They informed the appellant that one of the officers would conduct a pat-down search prior to the discussion. *Id.* The affidavit of probable cause indicated that the appellant complied with the officer's order to place his hands on the vehicle and spread his legs for the search. *Id.* The officer located an object in the appellant's left front pants pocket and questioned Appellant about the object. *Id.* The appellant indicated that it was "chronic," a street name for marijuana. *Id.* This Court found that the appellant could reasonably have believed that his freedom of action was restricted and found the appellant was within the custody of the police officers when questioned and searched. *Id.* This Court further found the question posed during the search was interrogation, noting the officer should have known it was likely to lead to an incriminating response. *Id.* This Court found the admission and the marijuana should have been suppressed because the officer did not administer *Miranda* warnings to the appellant.[4]

*Id.*

---

[4] This Court further found that, although the interrogation was improper, the drugs would have been located during a lawful search incident to arrest, which would have occurred because the appellant possessed a gun, without a license and even though he had a prior conviction. *Ingram*, 814 A.2d at 272. The evidence therefore was admissible through the inevitable discovery doctrine. *Id.*

*(Footnote Continued Next Page)*

Here, the trial court found:

> In this case[,] Officer Cilento conducted a vehicle stop based on [a] stop sign violation. During the stop[,] Officer Cilento smelled a strong odor of burnt marijuana. Officer Cilento asked[5] the two (2) occupants why there was an odor of marijuana. The passenger, [Appellee], advised Officer Cilento that he smoked marijuana earlier.[6] Officer Cilento asked [Appellee] to exit the vehicle and performed a pat-down (for safety) which revealed no weapons. During the conversation, officer Cilento continued to ask [Appellee] if there was anything on his person and in the vehicle. [Appellee] responded that "I have some more stuff in my pocket[."] Officer Cilento asked which pocket and [Appellee] pointed down to his front right pocket. Officer Cilento asked [Appellee] ["]can I retrieve the item(s)[,"] and he stated "yes[."] Officer Cilento removed five (5) purple baggies containing heroin. [Appellee] was placed under arrest and placed him in the patrol vehicle.

> No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them. However, if the police action becomes too intrusive, a mere encounter may escalate into an investigatory detention or seizure[.] Prior to subjecting a citizen to an investigatory detention, the police must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity.[] ***See Commonwealth v. Matos***, [] 672 A.2d 769 ([Pa.]1996)[.]

*(Footnote Continued)* ─────────────

[5] The testimony indicates that, rather than Appellant responding to a direct question regarding the strong odor of marijuana, the officer mentioned the odor and Appellant stated they had smoked earlier and pointed to the wrappers. N.T., 8/27/2015, at 8, 12 ("what I smelled in the car was marijuana, and initially on the stop, [Appellant] had pointed out that they had smoked earlier"); ("Q: And you told him, I smell marijuana?; A: Yes, Ma'am; . . . Q: And he actually went, Yep, here it is, correct? A: Yes.").

[6] Appellant also showed the officer cigar wrappings used for marijuana.

This Court concludes the incident was not a mere encounter and the traffic stop escalated to an interrogation. [Appellee] could not have walked away after the police smelled the odor of marijuana. In fact, Officer Cilento testified that [Appellee] was not free to leave when he smelled the marijuana. There were two police officers surrounding [Appellee] with the overhead lights activated. This type of interaction is clearly intrusive and was an investigatory detention (seizure). Officer Cilento did not have probable cause to arrest the suspect "before" [Appellee] made any statements and did not conduct any further investigation. "Whether reasonable suspicion existed at time of [an] investigatory detention must be answered by examining the totality of circumstances to determine whether there was particularized and objective basis for suspecting the individual stopped of criminal activity." *See Commonwealth v. Beasley*, 761 A.2d 621, 624 [Pa.Super.2000].

The test for determining whether an individual has been "seized" is, if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave. When [Appellee] was asked to exit the vehicle, he was not free to leave. Officer Cilento began to question [Appellee] without first reading his *Miranda* warnings. In this situation a reasonable person would have believed he or she was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 555, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).

Officer Cilento knew or should have known that the Miranda warnings are called for when the police questioning constitutes interrogation; that is, likely or expected to elicit a confession or other incriminating statements. *See Commonwealth v. Bracey*. 461 A.2d 775, 780 (Pa.1983). This [c]ourt finds that the questions asked by the officer constitute custodial interrogation. Since no *Miranda* warnings had been given at that time, this [c]ourt holds that the questioning on the part of the officer was a violation of [Appellee's] Fifth Amendment rights.

Accordingly, [Appellee's] statements are inadmissible as evidence and the seizure of the contraband found in the

center console and items found on [Appellee] did occur in violation of [Appellee's] constitutional rights (Article I, Section 8 of the Pennsylvania Constitution.) However, since the 100 purple paper "empty" baggies on the front passenger side floor was observed in plain view, that evidence is admitted.

Opinion, 10/26/2015, at 5-6.

The trial court erred in finding **Miranda** warnings were required prior to the officer's question as to whether there was anything on Appellant's person or in the vehicle. The officer properly stopped the car, which had not stopped at a stop sign. The strong smell of marijuana supplied reasonable suspicion of criminal activity that justified an investigatory detention. Attendant to that investigatory detention, the officer could properly inquire as to whether Appellant had any additional information the officer should know.[7] **See Commonwealth v. Kemp**, 961 A.2d 1247 (Pa.Super.2008) (finding Appellant's consent to search the vehicle was voluntary, where officer had reasonable suspicion that appellant possessed narcotics and there was no excessive police conduct, no physical contact between police

_____

[7] Appellant did not challenge whether the police officer had reasonable suspicion to fear for his safety to justify the pat-down search before the suppression court, and does not challenge the search before this Court. **See, e.g., Commonwealth v. Scarborough**, 89 A.3d 679, 683 (Pa.Super.2014) ("a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons," **quoting Commonwealth v. Clemens**, 66 A.3d 373, 381 (Pa.Super.2013)). Therefore, we will not discuss the issue.

and appellant, and officer did not display weapon or act aggressively.). As in **Pakacki**, the officers smelled marijuana following a stop and asked follow-up questions, but the facts did not establish that the stop became a custodial interrogation, requiring **Miranda** warnings, until after the officer discovered the narcotics. Appellant was not physically denied his freedom of action in any significant way or placed in a situation in which he reasonably believed that his freedom of action or movement was restricted by the interrogation.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Shogan joins in the Memorandum.

Judge Lazarus files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/14/2016