725 A.2d 1197

## COMMONWEALTH of Pennsylvania, Appellee,

v.

## Scott Wayne BLYSTONE, Appellant.

Supreme Court of Pennsylvania.

Submitted Feb. 3, 1997.

Decided Feb. 26, 1999.

566

570

Robert Brett Dunham, Philadelphia, Paul D. Boas, Pittsburgh, for S. Blystone.

John Kopas, III, Fairchance, Robert A. Graci, Harrisburg, Peter U. Hook, Uniontown, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CASTILLE, Justice.

This is a direct appeal from the order of the Court of Common Pleas of Fayette County denying appellant's petition for post-conviction relief.[1] For the reasons expressed herein, we affirm the order of the PCRA court.

On June 13, 1984, a jury convicted appellant of first degree murder, robbery, conspiracy to commit homicide and conspiracy to commit robbery.[2] Following a separate penalty proceed-

1. Under Section 9546(d) of the Post–Conviction Relief Act, (PCRA), 42 Pa.C.S. §§ 9541–9551, the denial of post-conviction relief in a death penalty case is directly reviewable by this Court.

2. The evidence at trial established that on September 9, 1983, at approximately 12:00 a.m., appellant was driving in his automobile along with his girlfriend and two other companions. Appellant noticed the victim, Dalton Charles Smithburger Jr., hitchhiking and decided to pick him up in order to rob him. Appellant asked the victim if he had any money to contribute for gas. The victim replied that he had only a couple of dollars. Dissatisfied with this response, appellant pulled out his revolver, held it to the victim's head and ordered him to place his hands on the dashboard and shut his eyes. The victim complied with appellant's orders. Shortly thereafter, appellant pulled his vehicle off the road at an isolated spot, led the victim into a field and searched him, finding only thirteen dollars. Appellant ordered the victim to lie face down on the ground while he returned to the car to inform his companions that he was going to kill the victim. Appellant then returned to where the victim lay, knelt on his back, and asked him if he could identify the car that had picked him up. The victim gave a scant description of the car. Appellant then uttered "goodbye" and emptied

ing, the jury sentenced appellant to death.[3] On direct appeal, this Court affirmed the convictions and judgment of sentence. *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988). On February 28, 1990, the United States Supreme Court affirmed the sentence of death. *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990).

On October 12, 1995, over eleven years after his conviction, appellant filed a petition under the PCRA alleging numerous issues including claims of ineffectiveness of counsel, trial court errors and constitutional violations. After an evidentiary hearing, the PCRA court denied appellant's petition for collateral relief by memorandum opinion and order dated January 4, 1996. This appeal followed.

This Court's standard of review from the grant or denial of post-conviction relief is limited to determining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error. *Commonwealth v. Travaglia,* 541 Pa. 108, 117 n. 4, 661 A.2d 352, 356 n. 4 (1995), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996). In order to be eligible for relief under the PCRA, an appellant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S. § 9543(a)(2),[4]

his revolver into the back of the victim's head. A more detailed account surrounding appellant's conviction is set forth in this Court's opinion affirming the judgment of the sentence of death on direct appeal. *See Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988).

3. The jury found one aggravating circumstance, that appellant had killed the victim during the course of the felony of robbery, and no mitigating circumstances. 42 Pa.C.S. § 9711(d)(6). A jury is required to sentence a defendant to death if it unanimously finds at least one aggravating circumstance and no mitigating circumstances. 42 Pa.C.S. § 9711(c)(1)(iv). Appellant was further sentenced to a consecutive term of imprisonment of ten to twenty years on the robbery conviction.

4. Appellant filed his PCRA petition before the 1995 and 1997 amendments to the PCRA took effect. At the time that appellant filed his PCRA petition, section 9543(a)(2) provided that appellant would be entitled to PCRA relief if his conviction or sentence resulted from the following:

that the issues he raises have not been previously litigated,[5] and that the claims have not been waived. *Id.,* 541 Pa. at 117, 661 A.2d at 356; 42 Pa.C.S. § 9543(a)(3). It is with the above standards in mind that we examine appellant's claims.

■ Appellant first argues that he was deprived of his right to an impartial jury because the empaneled jury was improperly death qualified.[6] Specifically, he asserts that there is a *possibility* that at least one unknown potential juror was improperly stricken for cause.[7] This claim does not entitle appellant to PCRA relief.

> (i) A violation of the Constitution of Pennsylvania or laws of this Commonwealth or the Constitution of the United States which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.
> (ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.
> (iii) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused an individual to plead guilty.
> (iv) The improper obstruction by Commonwealth officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court.
> (v) A violation of the provisions of the Constitution, law or treaties of the United States which would require the granting of Federal habeas corpus relief to a State prisoner.
> (vi) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and that would have affected the outcome of the trial if it had been introduced.
> (vii) The imposition of a sentence greater than the lawful maximum.
> (viii) A proceeding in a tribunal without jurisdiction.

5. An issue will be deemed previously litigated when the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue. 42 Pa.C.S. § 9544(a)(2).

6. Under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), a juror cannot be excused for expressing personal, philosophical, or religious opposition to the death penalty. A juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).

7. On appellant's direct appeal, he set forth this same argument with regard to juror 102; alleging that the juror was improperly excused for cause. This Court denied appellant's claim, finding that the trial court

First, appellant fails to demonstrate, as he must under the PCRA, how the alleged exclusion of this unknown juror so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place.[8] In addition, the trial court, in its post-trail motion opinion, found that: "In all, five jurors out of ninety-six subjected to voir dire in this case were excused for cause upon challenge by the Commonwealth by reason of their responses to questions concerning the imposition of the death penalty." Trial Ct. Opinion, June 10, 1986, at 58. The trial court then analyzed the questioning of each juror which the Commonwealth had challenged for cause. The court noted that "[a] review of the testimony of these jurors clearly shows that their exclusion for cause was proper." *Id.* at 64. We agree that the record simply does not support appellant's position that other jurors may have been excused for cause after having expressed only generalized opposition to the death penalty.[9]

correctly determined that juror 102 could not carry out her duty in accordance with the law; therefore, she was properly stricken for cause. *Blystone,* 519 Pa. at 467–68, 549 A.2d at 89.

**8.** In the recent case of *Commonwealth v. Kimball,* 1999 WL 22976 (Pa. Jan.22, 1999)(Zappala, J. concurring, Castille, J. concurring separately), this Court defined, in the context of an ineffective assistance of counsel claim, the standard enunciated in the PCRA that an error "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." In *Kimball,* a majority of this Court held that, in order to demonstrate that ineffective assistance of counsel so undermined the truth determining process such that no reliable adjudication of guilt or innocence could have taken place, an appellant must show that, but for counsel's ineffective representation, there is a reasonable probability that the outcome of the proceeding would have been different.

**9.** Alternatively, appellant argues that the lack of a reproduced transcript of the voir dire denies him the ability to fully investigate and present this issue for meaningful review. At the time of appellant's trial in June of 1984, the voir dire proceeding was recorded by a court stenographer. After appellant's trial, the stenographer transcribed only those portions of the voir dire that trial and appellate counsel requested for appellant's post-trial motions and direct appeal. The available portion of the voir dire transcript included all questions to which objections were made or otherwise put at issue including the voir dire of the only five venire persons struck for cause on motion by the Commonwealth, the voir dire of the venire person where appellant's

trial counsel had allegedly erred in using a peremptory challenge, the trial court's general voir dire questions to two different groups of twelve venire persons where three potential jurors were dismissed because of pre-trial publicity, and two almost identical sets of instructions issued by the trial court to venire persons prior to their being questioned.

Appellant filed several motions along with his initial PCRA brief to this Court, including *inter alia*, a motion requesting this Court to issue an order directing that the untranscribed stenographically recorded voir dire proceedings be transcribed in full and forwarded to appellant for review. Additionally, appellant sought *nunc pro tunc* appeal rights as to any issues resultant from his review of the transcribed voir dire. Finally, he requested that this Court hold his current PCRA appeal in abeyance pending the disposition of his *nunc pro tunc* appeal regarding voir dire.

Appellant's initial brief to this Court on his PCRA appeal exceeded 231 pages in length, excluding exhibits. Appellant's counsel had not obtained permission from this Court to exceed the prescribed page limit of the brief, in violation of Pa.R.A.P. 2135. Accordingly, we quashed the brief and directed appellant's counsel to re-file the brief in accordance with the Rules of Appellate Procedure. Appellant re-filed the brief, but failed to include any motions. Therefore, because appellant's initial filings before this Court were quashed, there is no motion pending concerning the voir dire transcripts.

We note however, that any request that this Court order the stenographer to transcribe the stenographic notes of voir dire would be frivolous. The request comes over eleven years after appellant's conviction, during which time appellant chose to forego a timely request for post-conviction review, and the basis of the request is appellant's mere hunch that one or more jurors *may* have been improperly stricken for cause. The only evidence that appellant presents in support of his theory is the vague statement of trial counsel, "[Y]es. We did that twice," which was not followed by any further questioning or explanation that would enable this Court to determine whether appellant's claim had any merit. In short, appellant fails to articulate any specific claims of error that might be revealed by the untranscribed voir dire. The PCRA court denied appellant's request to order that transcription be done, because it saw no reason to issue such an order. We agree with the decision of the PCRA court.

Further, at a hearing on November 30, 1995, counsel for appellant stated for the record that the trial court's stenographer was now retired and was the twenty-four hour caretaker of her elderly, ailing father and did not think that she could provide a complete voir dire transcript in much less than a year's time. Trial Ct. PCRA Opinion at 12. Additionally, the court reporter's notes were taken to other stenographers who, by affidavit, stated that they were unable to transcribe and certify the stenographic notes of voir dire. This, coupled with the fact that appellant has failed to present any specific evidence to demonstrate that there may be a cognizable claim contained within the untranscribed voir dire proceedings leads us to conclude that we need not grant appellant's request. There was no testimony elicited during the PCRA hearing from appellant's trial counsel, appellate counsel or any other

■ Appellant next argues that the trial court violated his due process rights and his right to an impartial capital sentencing jury pursuant to the Sixth and Fourteenth Amendments by not allowing trial counsel to life qualify the jury during voir dire.[10] In support of his position, appellant cites *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), where the United States Supreme Court held that, during voir dire for a capital offense, a state trial court may not, consistent with the Due Process Clause of the Fourteenth Amendment, refuse inquiry into whether a potential juror would automatically impose the death penalty upon conviction of the defendant.

The Court's decision in *Morgan* was not issued until well after appellant's direct appeal was finalized. Thus, we must determine whether the rule enunciated in *Morgan* is to apply retroactively. In *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court barred the retroactive application upon collateral review of a new constitutional rule of criminal procedure that is announced after a defendant's conviction is final, because all avenues of direct appeal have been exhausted.[11] The *Teague* Court held that a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government, or if the result was not dictated by precedent existing at the time the defendant's conviction became final. *Id.* at 301, 109 S.Ct. 1060; *see also Commonwealth v. Christy,* 540 Pa. 192, 216, 656 A.2d 877, *cert. denied,*

source that would remotely suggest that there are viable claims arising out of voir dire.

Finally, appellant alleges that post-verdict and appellate counsel were ineffective for failing to notice that the transcripts were unavailable and for failing to raise the issue on appeal. Because we have determined that the underlying claim has no merit, counsel will not be deemed ineffective for failing to raise a meritless issue.

10. Life qualification occurs where counsel identifies and excludes those prospective jurors who would vote for the death penalty in every case after finding the defendant guilty of first degree murder. *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

11. The *Teague* Court created two narrow exceptions to this general rule, neither of which is applicable to appellant's case.

516 U.S. 872, 116 S.Ct. 194, 133 L.Ed.2d 130 (1995) (a case which breaks with past precedent is not applicable retroactively to cases final on direct appeal but pending in a collateral proceeding); *Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1347 (1997) (even a case which breaks with past precedent that is given a fully retroactive effect is not applied to any case on collateral review unless the decision announcing the new rule of law was handed down during the pendency of the defendant's direct appeal and the issue was properly preserved on direct appeal).

Here, application of the *Teague* test indicates that the rule enunciated in *Morgan* should not be applied retroactively to appellant's case on collateral review because *Morgan* constituted a new rule for voir dire in capital cases. Prior to the *Morgan* decision, the United States Supreme Court had not imposed a mandatory requirement that a defendant be afforded a life qualifying voir dire question upon request. Additionally, prior to *Morgan*, Pennsylvania did not mandate that juries be questioned on life qualification. *See Commonwealth v. Tilley*, 528 Pa. 125, 151, 595 A.2d 575, 587–88 (1991) (holding that life qualification of a jury was not required to insure that a fair and impartial jury was selected). Therefore, under the test enunciated in *Teague*, the holding of *Morgan* announced a new rule and placed a new obligation on the states. A new rule of law to which we give full retroactive effect, will not be applied to any case on collateral review unless that decision was handed down during the pendency of an appellant's direct appeal and the issue was properly preserved there, or, is non-waivable. *Commonwealth v. Gillespie*, 512 Pa. 349, 354, 516 A.2d 1180, 1183 (1986). Thus, the trial court properly precluded trial counsel's voir dire questions in accordance with the established law at the time of appellant's trial, and appellant is not entitled to relief on this basis.

Appellant next argues that the trial court's requirement that both the Commonwealth and appellant exercise their peremptory challenges immediately following their respective voir dire examinations, violated his due process rights

and his right to an impartial jury under both the State and Federal Constitutions.[12] Appellant contends that this procedure was unconstitutional and violative of Pa.R.Crim.P. 1106(e)(1)(b).[13]

Appellant fails to demonstrate, as he must under the PCRA, how the court's requirements for the exercise of peremptory challenges so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. During the PCRA hearing, appellant elicited from his trial counsel the specific procedures that the trial court required of both parties. However, appellant failed to elicit any testimony that described a single instance where trial counsel wanted to exercise a peremptory challenge but was precluded from doing so because of the trial court's requirement. In fact, the one example that trial counsel provided to demonstrate the effect of the court's rule was one that impacted negatively upon the Commonwealth, not on appellant.[14] Thus, the negative impact of the trial court's rule, in the single example illuminated by appellant, was at the Commonwealth's expense, not appellant's. Accordingly, appellant is not entitled to relief on this basis.

Appellant next raises numerous claims of ineffectiveness of counsel. To establish a claim of ineffective assistance of counsel, appellant bears the burden of proving: (1)

12. The trial court would not allow a party to exercise a peremptory challenge after the other party began its own examination of the prospective juror.

13. The rule provides:

Challenges, both peremptory and for cause, shall be exercised alternately, beginning with the attorney for the Commonwealth, until all jurors are chosen. Challenges shall be exercised immediately after the prospective juror is examined. Once accepted by all parties, a prospective juror shall not be removed by peremptory challenge. Without declaring a mistrial, a judge may allow a challenge for cause at any time before the jury begins to deliberate, provided sufficient alternates have been selected, or the defendant consents to be tried by a jury of less than 12, pursuant to Rule 1103.

14. The prosecutor had been precluded from exercising a peremptory challenge because appellant had begun questioning the prospective juror.

that the underlying claim is of arguable merit; (2) that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate appellant's interest; and (3) that the act or omission prejudiced appellant in such a way that the outcome of the proceeding would have been different. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).[15] If it is clear that appellant has not met the prejudice prong of the ineffectiveness standard, the claim may be dismissed on that basis alone and this Court need not determine whether the first and second prongs have been met. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

First, appellant argues that trial counsel was ineffective for failing to request that the jury be instructed that it could not consider appellant's statements about having robbed the victim unless the corpus delicti of the robbery was established beyond a reasonable doubt with independent evidence. *See e.g. Commonwealth v. Reyes*, 545 Pa. 374, 384, 681 A.2d 724, 728–729 (1996) (there are two phases of corpus delicti rule; phase one deals with the quantum of evidence necessary for the admission of extra-judicial statements, phase two deals with the quantum of evidence necessary before the jury may consider extra-judicial statements in assessing guilt or innocence). In the alternative, appellant argues that the trial court should have provided such an instruction even absent a request from counsel. These claims warrant no relief as they have been previously litigated on appellant's direct appeal.[16]

15. In addition, under the language of the PCRA, appellant must demonstrate how counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2). However, pursuant to *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999), the PCRA does not create a heightened standard for claims of ineffective assistance of counsel than the standard employed for those claims on direct appeal.

16. On direct appeal, appellant asserted that the Commonwealth had not presented sufficient evidence to satisfy the corpus delicti requirement for the crime of robbery and that trial counsel was ineffective for failing to argue and preserve any corpus delicti issue relating to the robbery conviction. This Court first undertook an extensive review of whether there was sufficient evidence to sustain appellant's robbery conviction

■ Appellant next argues that trial counsel was ineffective for failing to seek remedial measures in response to a witness' reference to appellant having been in prison and on parole.[17] Further, appellant argues that appellate counsel was ineffective for failing to pursue this claims in his direct appeal. We find these claims to be without merit because appellant has failed to demonstrate how counsel's actions prejudiced him.

■ Not all references which may indicate prior criminal activity require reversal. *Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979). Mere passing references to criminal activity will not require reversal unless the record indicates that prejudice resulted from the reference. *Id.* Here, as indicated in this Court's direct review of this matter, there was overwhelming evidence of guilt presented against appellant. Accordingly, it cannot be said that counsel's failure to seek remedial measures in response to the witness' reference to appellant's previous involvement with the justice system prejudiced appellant.

Further, at the PCRA hearing, counsel explained that he did not pursue cautionary instructions, move to strike the unresponsive answer, or move for a mistrial because such action would have served only to highlight the statements which were not overly emphasized to the jury. N.T. PCRA Vol. 1, at 54. Therefore, trial counsel's actions were reasonably designed to effectuate appellant's best interests and counsel will not be deemed ineffective. *See Commonwealth v.*

and found that the Commonwealth had presented ample evidence, apart from the appellant's own admissions, that he had in fact robbed the victim. *Blystone*, 519 Pa. at 458, 549 A.2d at 84. This Court further stated: "Since we have addressed the substance of the corpus delicti issue in our review of the sufficiency of the evidence, we will not consider the ineffectiveness claim." *Id.* 519 Pa. at 458 n. 9, 549 A.2d at 84 n. 9.

17. On direct examination, to the surprise of the prosecutor, a Commonwealth witness stated that the reason she had carried a weapon was because appellant was on parole and asked her to. The prosecutor did not deliberately elicit this testimony. In addition, in response to cross-examination by appellant's counsel, the witness stated that she had known appellant since he got out of prison.

*Buehl,* 540 Pa. 493, 506 n. 6, 658 A.2d 771, 778 n. 6 (1995) (trial counsel may have wished to avoid emphasizing what might have gone relatively unnoticed by the jury, and thus possessed a reasonable basis for failing to request an instruction); *Commonwealth v. Riley,* 459 Pa. 42, 46, 326 A.2d 400, 402 (1974) (cautionary instruction could only serve to emphasize or refresh jury's memory of improper incident).[18]

 Appellant next argues that he was denied the right to counsel under the Sixth Amendment of the United States Constitution and under Article 1, Section 9 of the Pennsylvania Constitution because trial counsel was an inexperienced part-time public defender. This Court has consistently stated that inexperience alone is not equivalent to ineffectiveness. *Commonwealth v. Williams,* 537 Pa. 1, 27, 640 A.2d 1251, 1264 (1994). In addition, appellant fails to demonstrate how counsel's inexperience prejudiced him. His attempts at demonstrating prejudice are merely repetitions of the claims already asserted in the brief. Accordingly, this claim must fail.

 Appellant next alleges that trial counsel was *per se* ineffective for failing to investigate, present, or argue any mitigating factors during the sentencing phase.[19] We find this claim to be without merit. Counsel requested appellant to testify regarding his past background and wanted appellant's father to testify regarding appellant's troubled childhood. Appellant not only refused to take the stand to testify in mitigation, but he also refused to allow any other mitigating evidence to be presented on his behalf.

On appeal to the United States Supreme Court, the Supreme Court found that "[a]fter receiving repeated warnings from the trial judge, and contrary advice from his counsel, [appellant] decided not to present any proof of mitigating evidence during his sentencing proceedings." *Blystone,* 494 U.S. at 307 n. 4, 110 S.Ct. 1078. When the trial judge asked

**18.** Likewise, appellate counsel cannot be deemed ineffective for failing to pursue this meritless issue.

**19.** Specifically, appellant alleges that counsel failed to obtain appellant's military records, failed to interview family and friends, and failed to investigate possible mental health mitigation.

appellant to explain this decision, appellant stated: "I don't want anybody else brought into it." *Id.* Accordingly, it was appellant's choice not to present any mitigating evidence.[20] Appellant is not entitled to a new trial where trial counsel acceded to appellant's wishes and refrained from presenting evidence of mitigating factors when it was appellant himself who prevented the presentation of any mitigating factors. *See Commonwealth v. Cross*, 535 Pa. 38, 44–45, 634 A.2d 173, 176 (1993), *cert. denied*, 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994) (counsel has no right to override what the client considers to be in his best interest; this is particularly true when it has been determined that the client is competent to stand trial). If this Court were to allow an ineffectiveness claim to succeed after appellant made a knowing, intelligent and voluntary waiver of his right to present mitigating evidence, it would have the unwanted and absurd effect of allowing appellant and other defendants to build automatic ineffective assistance claims into their case in order to guarantee themselves a new sentencing hearing should they receive the death penalty.

■■■■■ Appellant next argues that trial counsel could not have adequately counseled appellant on waiving his right to offer mitigating evidence during the sentencing phase because

**20.** In addition, the trial judge, during an extensive colloquy with appellant in the sentencing phase, explained that if the jury found that the murder was committed during the commission of a robbery, this would be an aggravating circumstance, and if there were no mitigating circumstances, the jury would be obligated to impose the death penalty. The trial judge further explained that the decision not to offer mitigating evidence would not effect appellant's overall right to appeal the conviction and sentence; however, the court specifically instructed appellant that he could not later appeal his decision not to offer mitigating evidence.

The trial court ultimately determined that appellant was a competent and intelligent person who understood what had been explained to him, that the decision not to offer any testimony or evidence during the sentencing phase was made after careful consideration with his counsel, and that appellant fully understood the possible consequences of his decision not to offer any testimony. The court repeatedly instructed the jurors to consider all the evidence presented to them in attempting to find mitigating circumstances. Accordingly, appellant has failed to demonstrate how counsel's alleged ineffectiveness prejudiced him.

counsel failed to investigate all possible mitigating circumstances. The PCRA court determined that counsel conducted a proper investigation into all possible mitigating circumstances, and we find substantial support in the record to uphold the PCRA court's determination.[21] Because the PCRA court's determination is well grounded in evidence of record and is in accord with the laws of Pennsylvania, we will not disturb its determination. *Travaglia,* 541 Pa. at 117 n. 4, 661 A.2d at 356 n. 4. Therefore, appellant's claim must fail.

■ Appellant next argues that trial counsel was ineffective for stating during closing argument in the sentencing phase that "[w]e can still take this man into our hands and hope that at some point in his life he can be rehabilitated." Appellant contends that this statement implied that if the jury opted to impose a life sentence instead of the death penalty, that appellant would be released from prison at some point in the future. We fail to see how trial counsel's statement could warrant such a finding by the jury. Counsel was merely arguing that the jury should spare appellant's life because of his potential to make positive contributions to society in the future. The statement was an attempt at arguing for mitigation. One cannot infer that this statement implied a possible release from prison. Thus, this claim is without merit.

■ Appellant next argues that trial counsel was ineffective for failing to pursue a defense of voluntary intoxication or diminished capacity during the guilt phase of the trial so as to possibly reduce appellant's conviction from first degree mur-

21. The record reveals that an investigator from the Public Defender's Office assisted trial counsel in preparing for appellant's trial. Counsel reviewed all discovery materials available in appellant's case and interviewed appellant extensively. Trial counsel also interviewed appellant's mother father, and sister, and extensively reviewed the list of mitigating circumstances allowable under the law with appellant and his family to determine if any such circumstances applied to his case. Neither appellant nor his family members apprised counsel that appellant had any problems with drugs or alcohol. Moreover, counsel had appellant examined and evaluated for mental health purposes at Mayview State Hospital. This evaluation showed no signs of any mental illness. This type of preparation can hardly be deemed a failure of trial counsel to adequately investigate the existence of mitigating circumstances.

der to third degree murder. Specifically, appellant argues that trial counsel should have called specific witnesses in order to establish appellant's intoxication on the night of the murder.

The first witness whom appellant purports would have testified as to his intoxication had serious credibility problems. The PCRA court made the following observations about the witness:

[the witness] testified at the PCRA hearing that [appellant] was at a party in the early evening of September 9, 1983. She stated that she now remembers that [appellant] was drinking a lot of beer and using marijuana during the party and that she asked him to leave because he was drunk. When asked about her own drinking that evening she gave conflicting answers, at one point saying that she was not drinking and then testifying that she was. [The witness'] PCRA testimony regarding events twelve years past carries little weight in light of her prior testimony during the hearing on post-verdict motions wherein she could not even remember which of her own birthdays she celebrated by giving the party. In said post-verdict testimony [the witness] made no references to any drug use or drunkenness on [appellant's] part although she stated that she and unnamed guests were drinking and having a good time. The court further notes that [the witness'] memories about the length of [appellant's] attendance at her party were unreliable even at the post-verdict hearing as she was impeached with contradictory testimony she had given at the trial of [appellant's] co-defendant some months earlier.

Trial Ct. PCRA Opinion at 20–21. We find that the PCRA court's findings are supported by the record and, therefore, we will not disturb its finding that this witness was not credible and her testimony does not provide credible support for appellant's position that he was intoxicated at the time of the murder.

Further, although one of appellant's convicted co-conspirators, a Commonwealth witness, testified at trial that the group purchased a fifth of whiskey on the night of the murder, the record simply does not support appellant's position that his

alleged intoxication negated his intent to kill or diminished his mental capacity. To the contrary, appellant admitted to a police informant: "I knew what I was going to do. I told everybody what I was going to do." N.T. Trial at 115. Further, he indicated to his friends that it was necessary to kill the victim because the victim could identify them. By appellant's own admission, he articulated a specific intent to kill at the time of the murder.

 In addition, Pennsylvania's version of the diminished capacity defense applies only to evidence pertaining to those cognitive functions necessary to form a specific intent. *Christy*, 540 Pa. at 203, 656 A.2d at 882. Appellant has failed to present credible evidence to establish that he suffered from any mental infirmities at the time of the murder. As the PCRA court properly noted, when PCRA counsel finished with his extensive questioning of the psychological witnesses presented at the PCRA hearing,[22] it became apparent that their testimony was irrelevant with regard to a diminished capacity defense during the guilt phase, since neither of the witnesses testified that appellant's alleged impaired cognitive functions in any way affected his ability to formulate the specific intent to kill. Further, there was no diagnosis of mental disorder in the Mayview Hospital report or in appellant's naval discharge records, both of which appellant's experts relied upon in forming their opinions that appellant's inability to conform was present and apparent at the time of trial. Counsel had appellant's mental health evaluated prior to trial, and based upon the information counsel received at that earlier time, there was no support for a diminished capacity defense. Accordingly, counsel will not be deemed ineffective for failing to present that defense.

22. Dr. Patricia Fleming, a psychologist from Cheyenne, Wyoming, and one Dr. Alec Whyte, a psychiatrist from Washington, D.C. testified at the PCRA hearing that, in their opinion, appellant was unable to conform his conduct to the law. However, these doctors only examined appellant eleven years after the murder in close proximity to the PCRA hearing. They did not know appellant at the time of the murder or at any time prior to trial.

██ Appellant next argues that the sentence of death should be vacated because the penalty-phase jury instructions, viewed in the totality of the circumstances of the case, improperly indicated to the jury that they had to be unanimous in finding a mitigating factor. *See Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988) (holding that a death sentence must be vacated where there is a substantial probability that reasonable jurors could understand that they must unanimously find a mitigating factor before they can weigh it against any aggravating factors). We find that the court's sentencing instructions were entirely proper.

The trial judge's charge to the jury almost exactly mirrored the dictates of 42 Pa.C.S. § 9711(c)(1)(iv), which requires the jury to recommend a sentence of death if it unanimously finds at least one aggravating circumstance and no mitigating circumstances. N.T. Trial at 147–52. We have held that this statutory language does not "state or infer a requirement that any given mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching a verdict." *Commonwealth v. Frey*, 520 Pa. 338, 347, 554 A.2d 27, 31 (1989), *cert. denied*, 494 U.S. 1038, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990). Thus, an instruction that tracks the language of the statute cannot be a violation of the *Mills* standard. The trial court neither directly nor implicitly instructed the jury that it had to unanimously find a mitigating factor before it could give that factor effect. Therefore, the claim is meritless.[23]

██ Appellant next argues that both his Federal and Pennsylvania Constitutional rights were violated because the trial court failed to inform the sentencing jury that, if the jury imposed a life sentence, appellant would be ineligible for parole. Appellant artfully constructs various constitutional arguments to substantiate his claim; however, all of his argu-

23. Further, there is nothing in the record to substantiate appellant's argument that other parts of the trial, including the court's guilt-stage instructions, counsel's arguments, and the court's sentencing-stage instructions all combined to mislead the jury as to their ability to individually consider and give effect to mitigating evidence.

ments fall well within the realm of *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which holds that where future dangerousness is made an issue with a capital sentencing jury and the defendant makes a specific request, it is a violation of due process for the trial court to fail to issue an instruction that life imprisonment means life without parole. This Court has held that *Simmons* does not apply retroactively on PCRA review. *Christy,* 540 Pa. at 217, 656 A.2d at 889. Therefore, this claim warrants no relief.[24]

 Appellant next argues that his federal and state Constitutional rights were violated when the prosecutor stated during closing argument that the jury should not be "guided by sympathy for the defendant or the victim" in their sentencing deliberations. Appellant asserts that the prosecutor misstated the applicable law and thus precluded the jury from making a proper determination of mitigating circumstances.[25] Appellant's assertion is flawed.

At the time of appellant's trial in 1984, the law of this Commonwealth precluded the jury from considering sympathy in its capital sentencing determination. *See Travaglia,* 502 Pa. at 501, 467 A.2d at 301, (prosecutor's argument reminding jury that sympathy was not a proper consideration was not improper). Moreover, the United States Supreme Court has determined that anti-sympathy instructions in general are not barred by the Federal Constitution. *See Saffle v. Parks,* 494 U.S. 484, 486, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)(stating that a constitutional rule prohibiting anti-sympathy instructions "is not dictated by our prior cases and, were it to be adopted, it would contravene well-considered precedents"). Thus, the prosecutor's remarks were proper under Eighth Amendment at the time of appellant's trial and the finalization

**24.** Furthermore, appellant fails to adequately demonstrate that his future dangerousness was at issue. Accordingly, the reasoning of *Simmons* does not apply here.

**25.** Appellant further argues that trial counsel was ineffective for failing to object to this statement and for failing to obtain a curative instruction, and that appellate counsel was ineffective for failing to pursue the issue on direct appeal.

of his direct appeal. *See Travaglia, supra,* (determining that the Eighth Amendment contained no such requirement in 1983). Accordingly, appellant's claim merits no relief. Because this claim is meritless, trial counsel was not ineffective for failing to object or seek a curative instruction, and appellate counsel was not ineffective for failing to pursue a meritless claim.

■ Appellant next argues that the cumulative effect of the aforementioned alleged errors and claims of ineffectiveness of trial counsel claims undermined the reliability of the jury's determination in both the guilt and sentencing phases to such an extent that a new trial is warranted. All of appellant's assorted claims concerning both the guilt and sentencing phases of his trial have failed for lack of merit. No amount of failed claims may collectively attain merit if they could not do so individually. *Commonwealth v. Murphy,* 540 Pa. 318, 657 A.2d 927 (1995). Thus, this claim is meritless.

Accordingly, appellant is not entitled to PCRA relief.[26]

---

**26.** Within ninety (90) days of the date that the sentence of death is upheld by this Court, the Prothonotary of this Court is directed to transmit to the governor's office the full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).